**Larry W. BRYANT, Plaintiff,**

v.

**SECRETARY OF the ARMY, Defendant.**

**Civ. No. 93–1289 (CRR).**

United States District Court,
District of Columbia.

Sept. 23, 1994.

Carolyn Lerner and James Heller of Kator, Scott & Heller, Washington, DC, for plaintiff.

Sally Rider, Asst. U.S. Atty., together with Eric Holder, U.S. Atty., and John Bates, Asst. U.S. Atty. (Major Fred Kennedy, of counsel, Office of The Judge Advocate Gen.), Arlington, VA, for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court in the above-captioned case are the parties' cross-Motions for Summary Judgment. On June 1, 1994, the Court held a Hearing to address the issues raised therein, which include, *inter alia,* the Plaintiff's First Amendment challenges to an Army regulation governing the publication of Civilian Enterprise Newspapers. The parties agree that no material issues of fact remain in dispute and that this matter is thus ripe for decision.

Accordingly, upon careful consideration of the oral arguments of counsel on the parties' Motions for Summary Judgment, their respective oppositions thereto, as well as their replies, and upon consideration of the applicable law, the Court has determined that both parties' Motions must be granted, in part, and denied, in part, as hereinafter provided.

More specifically, the Court finds that the Civilian Enterprise Newspapers at issue in this case are not public fora, and that the content-based restrictions embodied in the governing regulations are eminently reasonable in light of the purposes for which these newspapers were intended. The Court thus finds no merit to the Plaintiff's First Amendment claims that the Army regulation in question implicates impermissible content-based restrictions, either facially or as applied. As a result thereof, judgment must be entered in favor of the Defendant on all but one issue in this case.

Notwithstanding the deference owed to military regulations challenged on constitutional grounds, the Court finds that a small segment of the regulation in question does indeed contain an impermissible viewpoint-based restriction that violates the First Amendment and must accordingly be invalidated. In all other respects, however, the Court finds no violations of the First Amendment on the facts and circumstances presented by this case.

### BACKGROUND

The Plaintiff in this case, Larry Bryant, is a civilian employee of the Department of the Army. As the Associate Editor of the Army News Service, he works in the Office of the Chief of Army Public Affairs. *See* Plaintiff's Motion for Summary Judgment at 1. In the instant suit, Mr. Bryant alleges that the Defendant, the Secretary of the Army, has violated the First Amendment in connection with the Army's publication of Civilian Enterprise Newspapers ("CENs" or "CE Newspapers").

More specifically, the Plaintiff's Complaint arises primarily as a result of the Army's decision not to publish a number of letters he has written to the editors of two such CENs: *The Pentagram* and *The Stripe.* *The Pentagram* serves the U.S. Army Military District

of Washington and *The Stripe* serves the Walter Reed Army Medical Center.

Over the past few years, the Plaintiff has submitted several letters for publication in both newspapers. In these letters, Mr. Bryant has expressed, *inter alia*, his view that homosexuals should be allowed to serve in the military. He has also sought evidence concerning Unidentified Flying Objects ("UFO's") and UFO incidents. All of the letters Mr. Bryant submitted for publication have been rejected, with the exception of one letter concerning homosexuals in the military which *was* published in the August 13, 1992 edition of *The Pentagram*.

The Plaintiff now challenges both the Army's failure to publish his other letters and the Army regulation governing publication of the CENs—alleging unconstitutional violations of the First Amendment, both facially and as applied. In many respects, then, this case largely centers on the nature of the CE Newspapers. The Plaintiff contends that they constitute a "created" or "limited" public forum to which individuals possess certain First Amendment rights of access, such as protection from government restrictions impermissibly based on content or viewpoint. The Government, however, contends that the CEN is not a public forum, and indeed is more properly characterized as "Government speech," thus not implicating any First Amendment rights at all on the part of the Plaintiff or any other member of the public. Before analyzing the issues presented, however, it is necessary to briefly examine both the nature of CE Newspapers and the regulations governing their publication.

### The Applicable Regulation: Army Regulation 360-81

The record in this case reveals that CE Newspapers are published by commercial civilian publishers pursuant to contracts with individual military bases. The writers and editorial staff are members of the military whose salaries are paid by the Department of Defense—but the CENs are primarily financed through the sale of paid and classified advertising. The papers are ultimately distributed to both civilian and military audiences.

The CENs are officially part of the Army's Command Information Program—and are governed by Army Regulation ("AR") 360-81, "Command Information Program," which implements Department of Defense Instruction 5120.4, "Command Newspapers and Civilian Enterprise Publications." It is this regulation that the Plaintiff challenges as unconstitutional, both on its face and as applied.

AR 360-81 defines the Command Information ("CI") Program's mission as follows:

> to provide timely, accurate, truthful two-way communications between commanders and internal audiences to strengthen deterrence and the Army's war-fighting capabilities. Subjects addressed include the soldier, the unit, the Army, Unites States history, Government, and traditions, and topical items of common interest.

*See* Defendant's Statement of Material Facts as to Which There is No Genuine Issue ("SMF") at 1, AR 360-81, Ch. 1, ¶ 1-5.a.

In order to achieve these objectives, the regulation is designed to generate information that is both "pertinent" and "relevant" to the Command:

> Material from non-Army sources should not be used unless the information is *pertinent* and *relevant* to the command. Information is *pertinent* to a command when it has a significant impact on the command's mission or personnel. It is *relevant* if it is connected to the mission or personnel.

AR 360-81, Ch. 1, § 1-7.i (emphasis in original). The audience targeted by the CI program is also addressed by this regulation which further provides that:

> CI is aimed at a variety of internal audiences. Among them are soldiers (active duty and Reserve Components), families, civilians and local national employees, retirees, U.S. Military Academy (USMA), and Reserve Officer Training Corp (ROTC) cadets, and civilian aides to the Secretary of the Army.

*See* Plaintiff's Statement of Genuine Issues of Disputed Fact ("SGI") at 1; AR 360-81.

Most importantly for purposes of the instant litigation, however, AR 360–81 also contains a provision governing the inclusion of a "letters-to-the-editor" feature in the CENs:

(1) Commentaries (personal opinions) and editorials (command position) will be encouraged on subjects relevant to the command. When appropriate, the author will be identified.

(2) Commentaries and editorials may not extend to material not in consonance with policies of the Department of the Army.

AR 360–81, Ch. 2, Section III, 2–12(j).

At the heart of this dispute is the Plaintiff's contention that this regulation, AR 360–81, entails both content and viewpoint-based censorship, thereby entitling Mr. Bryant to summary judgment on his First Amendment claims. In opposition, the Government maintains that the Plaintiff's letters were not published as a result of an army determination that the information presented therein did not best meet the objectives of the Command Information Program. Moreover, the Defendant claims that the regulation in question is an entirely reasonable way for the army to implement the mission of the CI program—and that the military may thus edit its communications in the CENs as it sees fit.

Upon consideration of these issues, the Court finds that the CENs are not public fora and that, as such, there is no question that the vast majority of AR 360–81 can withstand judicial scrutiny under the applicable standard of review. However, to the limited extent that AR 360–81 permits viewpoint-based discrimination, the Court finds that even the deference owed to military regulations cannot justify upholding what the Court deems a facial violation of the First Amendment.

Essentially, the Plaintiff's claims can be roughly characterized as follows:

(1) the regulations contain impermissible content-based restrictions;

(2) the rejection of Mr. Bryant's letters constitutes an unconstitutional application of this content-based discrimination; and

(3) the regulations are facially invalid because they permit viewpoint-based discrimination in violation of the First Amendment.

As to the first issue, the Court finds no merit to the Plaintiff's contention. In view of the Court's determination that the CENs are non-public fora, the applicable standard of review for content-based restrictions requires that they be "reasonable in light of the purposes" for which the forum is designed. In the instant case, the content-based restrictions entailed in AR 360–81 are eminently reasonable in light of the military's purpose in establishing and maintaining civilian enterprise newspapers, and the Court thus finds no First Amendment violation on this ground.

As to the second issue, the Court similarly finds no evidence to support the Plaintiff's claim that AR 360–81 has been unconstitutionally applied by the Army in refusing to publish Mr. Bryant's letters. To the contrary, the Court finds that the Army's explanations for rejecting these letters easily survive the reasonableness test under the facts and circumstances presented by this case.

As to the third issue, however, the Court must agree with the Plaintiff that the regulations in question do permit viewpoint-based discrimination in violation of the First Amendment. It is not entirely clear how much of AR 360–81 the Plaintiff is seeking to invalidate on this ground—but the Court has examined the regulation and finds that only a small section of the regulation entails a facial violation of the First Amendment. Specifically, the Court finds that section (2) of AR 360–81, Section III, Ch. 2–12–j(2):

"Commentaries and editorials may not extend to material not in consonance with policies of the Department of the Army."

is unconstitutional on its face and cannot therefore be upheld. Notwithstanding the deference owed to military regulations challenged on this basis, the Plaintiff is correct in asserting that the prohibition against publication of material "not in consonance" with Army policy is a facial violation of the First Amendment and must therefore be invalidated.

Each of these issues is discussed below in far greater detail, but before undertaking

this constitutional analysis, the Court must briefly address two preliminary arguments raised by the Defense.

## DISCUSSION

As a threshold matter, the Defendant contends that traditional First Amendment analysis is inapplicable to the case at bar for two primary reasons: (1) a special standard of review should govern constitutional challenges to military regulations and (2) the First Amendment is not properly implicated by this matter because the case concerns Government "speech" rather than governmental regulation of the speech of others. As such, before turning to the merits of the Plaintiff's First Amendment claims, the Court must briefly address these two preliminary issues.

I. *The appropriate standard of review requires greater judicial deference to military regulations challenged on First Amendment grounds than might otherwise be required of the judiciary in reviewing similar governmental restrictions imposed in a civilian context.*

In addressing the allegations set forth in the Plaintiff's Complaint, the Defendant has correctly urged the Court to recognize that a special standard of review properly governs constitutional challenges to military regulations. More specifically, the Defendant appropriately contends that there is a more limited role for judicial review of military regulations challenged on First Amendment grounds than there would otherwise be in a civilian context. The Plaintiff has not explicitly contested this proposition, and the Court finds that there is indeed ample precedent to support the Defendant's claim for greater deference than a court might traditionally accord similar governmental regulations in a non-military setting.

In *Goldman v. Weinberger,* 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986), the Supreme Court explicitly recognized the long-standing principle that " 'the military is, by necessity, a specialized society separate from civilian society ... [which] must insist upon a respect for duty and a discipline

without counterpart in civilian life,' ... in order to prepare for and perform its vital role." *Id.,* at 506–507, 106 S.Ct. at 1312–1313 (citations omitted). As the *Goldman* Court thus explained, greater judicial deference is therefore appropriate in dealing with constitutional challenges that arise in connection with military life:

> Our review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society. The military need not encourage debate or tolerate protest to the extent that such tolerance is required of the civilian state by the First Amendment; to accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps.

*Id.,* at 507, 106 S.Ct. at 1313 (citations omitted).

Similarly, in *Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980), the Supreme Court upheld an air force regulation requiring prior approval from a commander for circulation of petitions on an air force base, upon a determination that the regulations protected a substantial government interest unrelated to the suppression of free expression. Recognizing the unique needs of the military, the *Brown* Court explained that:

> " 'Speech that is protected in the civil population may ... undermine the effectiveness of response to command.' " ... Thus, while members of the military services are entitled to the protections of the First Amendment, "the different character of the military community and of the military mission requires a different application of those protections." ... The rights of military men must yield somewhat " 'to meet certain overriding demands of discipline and duty....' " Speech likely to interfere with these vital prerequisites for military effectiveness therefore can be excluded from a military base.

*Id.* at 354, 100 S.Ct. at 599 (citations and footnote omitted). *See also Greer v. Spock,* 424 U.S. 828, 838, 96 S.Ct. 1211, 1217, 47 L.Ed.2d 505 (1976) (holding, *inter alia,* that there was no "generalized constitutional right

**580**

to make political speeches or distribute leaflets" on a military reservation).

■ The Government thus correctly urges the Court to accord greater deference to the regulations at issue in this case as a result of the special standard of review applicable to military regulations challenged on constitutional grounds. Notably, the Plaintiff has not explicitly challenged this claim, and offers no authority to rebut the proposition that military restrictions on speech are owed greater deference than comparable civilian regulations that potentially infringe upon First Amendment rights.

More specifically, the Government argues that the army newspapers exist to facilitate the military mission, improve morale, increase effectiveness, and provide the commander with a primary means of communicating essential information—all of which mandate in favor of greater judicial deference to AR 360–81. In response, the Plaintiff counters only by pointing out that the "mission" includes the provision of timely, accurate information, and the encouragement of "two-way, free flow of information." Although undeniably a part of the mission, this effort to facilitate the free flow of information does not detract from the primarily military objectives targeted by the regulation and by the CENS, and the importance of appropriate judicial deference as a result thereof.

There is, of course, no question that First Amendment concerns are not to be wholly disregarded in the military context. Nevertheless, in addressing the allegations in the Plaintiff's Complaint, the Court is mindful of the special character of military life and the concomitant need to accord greater deference than might otherwise be required in analyzing governmental regulations challenged on First Amendment grounds. As the *Goldman* Court made clear:

> These aspects of military life do not, of course, render entirely nugatory in the military context the guarantees of the First Amendment ... But "within the military community there is simply not the same [individual] autonomy as there is in the larger civilian community."

*Goldman,* 475 U.S. at 507, 106 S.Ct. at 1313 (citations omitted). It is with this caveat in mind, then, that the Court considers the merits of this case.

**II.** *The Court cannot accept the Defendant's contention that the First Amendment is not implicated by this case, because the CENs—and particularly the "letters-to-the-editor" section—are not merely government "speech."*

■ As an additional threshold matter, the Defendant also challenges the notion that the Plaintiff's First Amendment rights are even implicated by the facts and circumstances presented by this case. More specifically, the Defendant contends that the CENs constitute government "speech"—and that the Government thus has the right to control the medium of its own expression. In other words, the Defendant argues that the regulation in question is merely the means by which the Government exercises editorial discretion over its own communications, and that the Plaintiff therefore has no First Amendment rights with respect to these publications.

The Court, however, is not persuaded by this argument. Although it may be true that the editorial content of the CENs is used by the Army to facilitate the mission of a particular command or installation, and that the Court should not "second-guess" the military's determination as to what information best meets the command information objectives, this argument cannot be extended to cover a "letters to the editor" feature in such publications. The Court is of the opinion that the inclusion of a "letters to the editor" section—a feature that clearly does not reflect government speech in any ordinary sense of the term—removes any doubt that the CENs are not to be treated as purely a means of government expression.

Accordingly, the Court cannot accept the argument that the regulation in question is immune from the Plaintiff's First Amendment challenges, because the "letters to the editor" section of the newspaper cannot properly be classified as nothing more than government "speech." The Court thus finds that AR 360–81 is not addressed solely to the Government's role as speaker, but rather

touches upon instances in which the Government is seeking to regulate speech.

In view of the foregoing, the Court must now turn to a traditional First Amendment analysis in order to address the remaining contentions set forth in the parties' respective Motions for Summary Judgment. Essentially, the primary dispute presented by this case concerns the proper classification of a CEN under the public forum doctrine and the appropriate standard of review as a result thereof. The Defendant maintains that a CEN is a non-public forum and that the regulation in question easily passes muster under the applicable standard of review: "reasonable" in light of the purposes for which the CENs are printed. The Plaintiff, however, contends that a CEN constitutes a "created" or "limited" public forum, thereby triggering a strict scrutiny standard of review. Under either analysis, though, both parties maintain that they are entitled to prevail with regard to the Plaintiff's challenge to the Army's regulation as an impermissible restriction on the basis of both "content" and "viewpoint."

**III.** ***Upon careful consideration of all of the relevant factors and the unique character of the Civilian Enterprise Newspapers, the Court finds that the "Letters to the Editor" feature of the CENs is a non-public forum.***

It is well settled that there are three types of fora for purposes of First Amendment analysis: the traditional public forum, the designated (or "limited") public forum, and the non-public forum. *See Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Neither party contends that the CE Newspapers fall within the realm of traditional public fora, which typically include public gathering places such as parks and streets—historically the site of public assembly and debate. The relevant inquiry, then, is whether the "Letters to the Editor" feature of the CENs constitute "limited" public fora or non-public fora.

In addressing this issue, both parties agree that the "touchstone" for making this determination is the Government's "intent in es-

tablishing and maintaining" the forum. *See Stewart v. District of Columbia Armory Board,* 863 F.2d 1013, 1016 (D.C.Cir.1988). Offering further guidance in this respect, the D.C. Circuit has emphasized that

> Intent is not merely a matter of stated purpose; rather, it is, as *Cornelius* pointed out, a matter to be inferred from a number of factors:
>
>> [T]he Court has looked to the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum. The Court has also examined the nature of the property and its compatibility with expressive activity to discern the government's intent.... We will not find that a public forum has been created in the face of clear evidence of a contrary intent, nor will we infer that the government intended to create a public forum when the nature of the property is inconsistent with expressive activity.

*See Stewart,* 863 F.2d at 1016–17, quoting *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (citations omitted).

The Defendant vigorously asserts that there are no objective indicia that the Military intended to open the "letters to the editor" feature to the public, urging the Court to recognize that the only reason for the expenditure of DOD resources in connection with the CENs is in order to facilitate and implement the mission of the Command Information Program. In further support of this contention, the Government emphasizes that the " '*consistent* policy and practice of the government' has been to limit editorial content to material that facilitates accomplishment of the command or installation mission, and otherwise comports with the applicable regulations." *See* Defendant's Motion at 10 (citations omitted).

The Government further highlights the fact that decisions as to whether to publish letters to the editor are routinely committed to the discretion of the editorial staff, and it is undisputed that many, if not most, of the letters submitted for publication are not in

582

fact published. Moreover, the entire "letters to the editor" feature is often omitted altogether as a result of space limitations. As such, the Defendant urges the Court to find that the "letters to the editor" feature is not a public forum, and that the "general invitation" is merely to submit letters that "may or may not be published based upon a variety of considerations." *Id.* at 12.

In opposition, the Plaintiff seeks to persuade the Court that the Government has "opened up" this section of the CENs to the public as a place for expressive activity, thus evidencing an "intent" to create a "limited" public forum. In support of this claim, the Plaintiff argues that the "letters to the editor" column is a "regular" feature, and that contributions are solicited from non-military sources. In addition, the Plaintiff points to civilian distribution and advertising as further evidence of the Government's alleged "intent" to create a "limited" public forum, along with the Army's stated goal of promoting two-way communication to a variety of audiences, including members of the civilian population.

Notwithstanding the Plaintiff's claims to the contrary, however, the Court cannot conclude that the Government intended to create a "limited" public forum in establishing the CENs—nor even in its decision to include a "letters to the editor" feature. As the Supreme Court made clear in *Cornelius,* "[i]n cases where the principal function of the property would be disrupted by expressive activity, the court is particularly reluctant to hold that the government intended to designate a public forum." *Cornelius,* 473 U.S. at 804, 105 S.Ct. at 3450. Under the circumstances presented herein, the Court cannot conclude that the Army intended to create a public forum in establishing the CENs or even the letters-to-the-editor feature.

In the instant case, the principal function of the CENs is to further the objectives of the command installation, and the use of the CE Newspaper format is merely a reflection of the fact that CE Newspapers are a more "economical means to support CI objectives." *See* Defendant's Reply at 2. Although obviously "compatible" with expressive activity in a general sense, the Court finds that the

inclusion of a personal commentary section in the CENs is not sufficient evidence of "intent" to create a "limited" public forum—especially in view of the military context "in which the efficient operation of quintessential government functions is so clearly at stake." *See Stewart* at 1019–20.

Moreover, as a factual matter, the Court finds that relatively few letters to the editor are ever actually printed in either publication. Although the Plaintiff contends that this fact weighs in his favor because it tends to undermine any potential justification for rejecting his letters on the basis of limited space, the Court finds no merit to this argument. To the contrary, the Court believes that the infrequent publication of a relatively small number of personal commentaries is further evidence that the Government never intended to create a public forum in the CENs, preferring instead to preserve their character as an integral part of the Command Information program and allocating space in the newspapers accordingly.

Furthermore, the fact that the "letters-to-the-editor" column is " 'specifically used for the communication of information and ideas' " does not require a finding by the Court that it is necessarily a public forum. *See Muir v. Alabama Educational Television Commission,* 688 F.2d 1033, 1041 (5th Cir.1982) (holding that public television stations were not "public forums"), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983). *See also Estiverne v. Louisiana State Bar Association,* 863 F.2d 371 (5th Cir.1989) (holding, *inter alia,* that a state bar journal is a non-public forum). As the *Muir* Court explained:

> In the cases in which a public facility has been deemed a public forum the speakers have been found to have a right of access because they were attempting to use the facility in a manner fully consistent with the "pattern of usual activity" and "the general invitation extended."

*Muir,* 688 F.2d at 1042 (footnote omitted).

As the Defendant points out, the "pattern of usual activity" in the instant case is for the editorial staff—including the command public affairs office—to use its discretion in decid-

ing whether or not to publish personal commentaries or editorials that are "pertinent" and "relevant" to the command mission. The "general invitation extended" is simply to submit such materials for consideration by the editors within the framework of editorial discretion necessary to fulfill the CE newspapers' purposes—a framework which is carefully spelled out in the applicable regulations. *See* Defendant's Reply at 7. The Plaintiff thus has a *right* only to *submit* letters to the editor. As the Army's purpose in publishing CENs is incompatible with unrestricted publication of all such submissions, the Court thus finds that the CENs are not public fora.

## IV. *The Court further finds that the content-based restrictions contained within AR 360–81 are "reasonable" in light of the purposes of the forum and thus do not violate the First Amendment.*

In view of the Court's determination that the CENs are non-public fora, the Court must next assess whether the military regulations governing these publications are "reasonable" in light of the purposes for which the newspapers are published. *See Cornelius*, 473 U.S. at 809, 105 S.Ct. at 3452 ("The reasonableness of the Government's restriction of access to a nonpublic forum must be assessed in the light of the purposes of the forum and all the surrounding circumstances."). Under the facts and circumstances presented by this case, the Court concludes that the Defendant is correct in asserting that the regulation in question (to the extent that it embodies content-based restrictions) "easily passes muster" under this standard of review, and thus comports with the First Amendment.

As the Supreme Court explained in *Cornelius*, "a speaker may be excluded from a nonpublic forum if he wishes to address a topic not encompassed within the purpose of the forum." In the instant case, the Court finds that the purpose of the CE Newspapers is indeed to "facilitate the accomplishment of the command or installation mission." As such, regulations that permit the Army to limit publication of letters to materials that are "*pertinent* and *relevant* to the command"

and that are not "[p]olitical ... or ... *partisan in nature*" are eminently reasonable restrictions, well in keeping with the strictures of the First Amendment.

For these reasons, the Court has no difficulty in concluding that "content may [constitutionally] be considered by CE newspaper editors in determining whether or not to publish a letter to the editor." *See* Defendant's Opposition at 13. Mr. Bryant's attempts to convince the Court otherwise are not persuasive, and his claim that the regulations entail facially invalid content-based restrictions must fail.

In challenging the Army's regulations as impermissible content-based restrictions, the Plaintiff argues, *inter alia*, that the Army's policy of prohibiting publication of letters regarding homosexuals in the military is a "prior restraint"—presumed invalid under the First Amendment. Upon examination, however, the Court finds no merit to this claim.

First, as the Defendant points out, this so-called "policy" to which the Plaintiff refers was not even a blanket policy, let alone a content-based restriction. Rather, the Defendant briefly instituted this directive following President Clinton's inauguration in an effort to temporarily cope with space limitations during a time when national attention focused on this issue seemed likely to overwhelm the CENs if letters to the editor—or even regular articles—were published on this topic. In light of the CENs stated purpose, it was not at all unreasonable for the editorial staff to curtail publications relating to this issue in an effort to preserve space for the many other issues CENs are intended to address.

More importantly, the Court questions how the Plaintiff can even make this argument in good faith given his admission that one of his *own* letters—addressing this very topic (homosexuals in the military)—was in fact published in *The Pentagram*. Under the circumstances, then, the Court finds no merit to the Plaintiff's contention that this alleged "policy" is a prior restraint, and thus has no difficulty rejecting the Plaintiff's allegations that the regulation must be "presumed invalid."

■ With respect to the general issue of whether the restrictions embodied in the regulation are reasonable in light of the purposes of the forum, the Court finds that considerations as to whether submissions are "pertinent, relevant, partisan, political, or facilitate the accomplishment of the command or installation mission" are all appropriate inquiries and are properly committed to the discretion of the army's editorial staff. The Court thus rejects the Plaintiff's claim that the regulations contain facially invalid content-based restrictions. The Court has determined that the CENs are non-public fora and believes that the Defendant has demonstrated ample evidence in support of the Secretary's claim that the regulations in question are reasonable in light of the purposes for which the forum was established.[1]

## V. There is no evidence in the record to support the Plaintiff's claim that the regulation in question is unconstitutional as applied.

■ The Plaintiff further contends that the Defendant's refusal to publish all of his letters was improper, and that the regulations are thus unconstitutional as applied. The record, however, does not support this contention.

The Defendant's determination that Mr. Bryant's letters did not address topics relevant or pertinent to the military is entirely reasonable. In questioning the Defendant's stated justification for not printing Mr. Bryant's submissions, the Defendant offers only conclusory assertions and assorted facts which prove little, if anything, with regard to his claims.

For example, the fact that another CEN, *The Bayonet*, chose to publish a full page of commentaries concerning UFOs is hardly sufficient evidence to even call into question

the Army's editorial decisions not to publish Mr. Bryant's commentary on this issue. Indeed, even the Plaintiff concedes that the Army's explanation for its rejection of his letter regarding UFOs "may, admittedly, meet the 'reasonableness' standard of review for a non-public forum." *See* Plaintiff's Motion at 12. Thus, in view of the Plaintiff's failure to produce any real evidence in support of this claim, the Court will not second-guess the editorial board's decision not to publish the Plaintiff's letters.

Moreover, Mr. Bryant has in fact had one of his letters concerning homosexuals in the military accepted for print. That fact, coupled with the undisputed evidence that very few personal commentaries are generally published in the CENs, make it virtually impossible to accept Mr. Bryant's suggestion that his submissions have been rejected on unconstitutional grounds. The Court therefore finds no merit to the contention that the exercise of the Defendant's editorial discretion in not publishing all of Mr. Bryant's letters has in any way violated the Plaintiff's First Amendment rights.

## VI. To the limited extent that AR 360–81 prohibits publication of material "not in consonance" with Army policy, the Court must conclude that the Department's regulation contains a facially invalid viewpoint-based restriction in violation of the First Amendment.

■ Finally, regardless of whether or not the CENs are public or nonpublic fora, the Plaintiff contends that the regulation in question contains an unconstitutional viewpoint-based restriction that violates the First Amendment. In particular, the challenged portion of the regulation asserts that:

"exist to improve morale, increase the effectiveness of members of the military, and 'provide the commander a primary means of communicating mission-essential information to members of the command.'" *See* Defendant's Reply at 4. As such, the Defendant is correct in asserting that they therefore do not offend the First Amendment under either a reasonableness or a strict scrutiny standard of review. *Id.*

---

1. In the alternative, even if the Court were to find that the CENs were "limited" public forums, the Plaintiff has still failed to meet his burden in challenging the military's regulations on First Amendment grounds. Given the deference owed to military regulations facing constitutional challenge, the Court finds that the Army regulations in question can withstand even a strict scrutiny standard of review. As the Defendant suggests, the restrictions on speech imposed by AR 360–81

"Commentaries and editorials may not extend to material not in consonance with policies of the Department of the Army." AR 360–81, Section III, 2–12(j).

Upon careful consideration of this issue, the Court must agree with the Plaintiff that this section of the Army Regulation is a facially invalid viewpoint-based restriction that cannot be reconciled with the mandate of the First Amendment.

As the *Cornelius* Court made clear, viewpoint-based restrictions are impermissible even in non-public fora:

> Although a speaker may be excluded from a nonpublic forum if he wishes to address a topic not encompassed within the purpose of the forum ... or if he is not a member of the class of speakers for whose especial benefit the forum was created ... the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject.

*Cornelius,* 473 U.S. at 806, 105 S.Ct. at 3451. The Defendant's decision to prohibit publication of material "not in consonance" with Army policy impermissibly suppresses expression on the basis of the viewpoints expressed therein.

Although mindful of the special deference owed to military regulations challenged on constitutional grounds, the Court remains unpersuaded by the Defendant's many attempts to refute the notion that this segment of the regulation runs afoul of the First Amendment. The Army first strives to rebut this claim by arguing that the Government is permitted to consider viewpoint when exercising editorial control over its own expression. However, the Court has already rejected the notion that the letters-to-the-editor feature constitutes nothing more than government "speech." Nor is the Court persuaded by the Defendant's claim that the regulation is constitutional because Army "policy" explicitly encourages the consideration of differing and perhaps even "opposing" views. Finally, and perhaps most importantly, the Defendant almost tacitly concedes the possibility that this portion of the regulation embodies an unconstitutional viewpoint-based restriction by urging the Court to recognize that the remainder of the regulation would still survive even if the Court were to rule this segment unconstitutional.

■ Thus, after careful consideration of this issue, the Court concludes that this portion of the regulation permits the Army to engage in impermissible viewpoint-based discrimination and must therefore be invalidated as an unconstitutional violation of the First Amendment. As a result, section (2) of AR 360–81, Ch. 2, ¶ 2–12–j:

> Commentaries and editorials may not extend to material not in consonance with policies of the Department of the Army.

must be stricken. With respect to the remainder of the regulation and the actual operation of the CENs, however, the Court finds no merit to the Plaintiff's First Amendment claims and shall enter summary judgment for the Defendant on all other issues in this case.[2]

### CONCLUSION

Upon careful consideration of the parties' cross-Motions for Summary Judgment, all of the relevant pleadings, the oral arguments of counsel at the June 1, 1994 Hearing, the applicable law, and the entire record in this

---

**2.** The Plaintiff does not appear to be arguing that the Defendant relied upon the impermissible viewpoint-based discrimination embodied in this segment of the regulation in refusing to publish his letters. Nor does he offer any evidence which would support this claim. As a result, although the Court upholds Mr. Bryant's challenge to this portion of the regulation as facially invalid, there is no evidence that it was unconstitutionally applied in this instance. For the reasons set forth in Section V of this Opinion, then, the Court must defer to the Army's editorial discretion in not publishing the Plaintiff's submissions, as there is no evidence that the rejection of these letters was unreasonable under the circumstances of this case, nor is there any indication that the editors impermissibly relied upon viewpoint in making these determinations. The Plaintiff is, of course, free to re-submit any letters to the editor in view of the Court's decision to invalidate this section of the regulation—but the Court has no reason to suspect that the Defendant's prior determination was not in fact viewpoint-neutral, and shall thus not re-visit this issue here.

586

case, the Court finds that summary judgment must be entered in favor of the Defendant on all claims in this case, with the exception of the Plaintiff's challenge to Section (2) of AR 360–81, Ch. 2, ¶ 2–12–j, which the Court finds to be a facially invalid violation of the First Amendment.

After according due deference to the military regulations governing the publication of Civilian Enterprise Newspapers, the Court determined that the personal commentary features contained therein were not intended to constitute public fora. The record further revealed that the CEN regulations were "reasonable in light of the purposes" for which these non-public fora were designed, and the Court thus concluded that the regulations did not contain unconstitutional content-based restrictions. There was also no evidence to support the Plaintiff's claim that the regulations in question were unconstitutionally applied with regard to the rejection of Mr. Bryant's submissions. Indeed, it was only with respect to the single provision prohibiting the publication of material "not in consonance" with Army policy that the Court found any violation of the First Amendment.

As such, the Court shall enter judgment for the Plaintiff on his claim that this segment of the regulation constitutes a facial violation of the First Amendment and shall enjoin the Department of the Army from impermissibly engaging in viewpoint-based discrimination when selecting material for inclusion in the personal commentary section of the CENs. In all other respects, however, the Court finds no violation of the First Amendment. The military's interpretation and application of these regulations are otherwise appropriate under the facts and circumstances of this case, and judgment shall therefore be entered in favor of the Defendant on all of the Plaintiff's other claims. The Court shall thus issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.