# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 7, 2007        Decided October 30, 2007

No. 06-1162

NEW YORK REHABILITATION CARE MANAGEMENT, LLC AND
NEW YORK CENTER FOR REHABILITATION CARE, INC.,
PETITIONERS

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with
No. 06-1216

———

On Petition for Review and Cross-Application for
Enforcement of an Order
of the National Labor Relations Board

———

*Morris Tuchman* argued the cause and filed the briefs for petitioner.

*Usha Dheenan*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Ronald E. Meisburg*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel at the time the brief was filed, and *Jill A. Griffin*, Supervisory Attorney. *Meredith L. Jason* and

*Ruth E. Burdick*, Attorneys, entered an appearance.

Before: GINSBURG, *Chief Judge*, and ROGERS and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: New York Rehabilitation Care Management, LLC and New York Center for Rehabilitation Care, Inc. (together "the Company") petition for review of a decision and order of the National Labor Relations Board finding that they violated Section 8(a)(5) and (1) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(a)(5), (1). The principal issue is whether the Board abused its discretion in vacating a union certification and ordering a new representation election. The Company contends that the Board erred by considering issues beyond the scope of a representation proceeding. Under the unusual circumstances involved, we find no abuse of discretion by the Board in revoking the union certification and ordering a new election in a representation proceeding notwithstanding the extant collective bargaining agreement ("CBA"). Accordingly, because the Company's other defenses to its conceded refusal to bargain with the union that prevailed in the second election fail, we deny the petition and grant the Board's cross application for enforcement of its order.

## I.

Prior to 2002, the Company operated Lyden Care Center ("Lyden"), a 114-bed skilled nursing facility in New York City. For more than twenty years, Local 1199, New York's Health and Human Service Employees' Union, Service Employees International Union ("Local 1199") represented Lyden's employees.

On November 15, 2001, the Company submitted an application to the New York Department of Health to open the New York Center for Rehabilitation Care ("NY Center"), a new, 280-bed skilled nursing facility to be located a few blocks from Lyden, stating that it intended to close Lyden and transfer its patients to the new facility. The application stated that the Company anticipated that NY Center would be at eighty percent occupancy within twelve months. The Company estimated that it would need approximately 300 on staff once NY Center reached capacity. To effectuate this plan, the Company intended to increase the number of staff as patients arrived, hoping to transfer staff from Lyden to NY Center when Lyden closed. When Local 1199 attempted to obtain information about NY Center and any plan to transfer its member-employees to the new facility, the Company provided none.

On January 25, 2002, Local 300S, Production, Service and Sales District Council, United Food and Commercial Workers Union ("Local 300S") filed an election petition with the Board to become the collective bargaining representative for employees at NY Center. Neither the Company nor Local 300S provided the Board with any information about Local 1199's interest in the election, notwithstanding Local 1199's lengthy representation of Lyden's employees. Nor did they inform the Board of the Company's plan to expand significantly NY Center's workforce in the near future. Under the terms of a stipulation between the Company and Local 300S, only those employed at NY Center on January 12, 2002 would be eligible to vote. As of that date, NY Center had forty-one employees, thirty-seven of whom had worked less than eight hours. Despite being a skilled nursing facility, only fourteen of the eligible employees held jobs involving patient care, all fourteen of whom stopped working at NY Center the week before the first patient arrived. Following an election held on February 22, 2002, the Regional Director of the Board certified Local 300S

as the representative of NY Center employees. On April 26, 2002, three days before NY Center opened its doors, the Company and Local 300S entered into a four-year CBA. Lyden closed on October 9, 2002, transferring one hundred patients and seventy-seven employees to NY Center, and by October 16, 2002, NY Center had more than 200 employees, only twelve of whom had been eligible to vote in the February 22 election.

On October 25, 2002, Local 1199 filed a petition with the Board to invalidate Local 300S's certification and hold a new election. The Board considered Local 1199's petition in a representation proceeding, rather than an unfair labor practice proceeding. Following a four-day hearing, the Regional Director found that: (1) the two entities petitioning for review constitute a single employer under the Act, (2) the Company and Local 300S had failed to notify the Board about Local 1199's interest in the representation election, and (3) the employees voting in the February 22, 2002 election did not constitute a "substantial and representative" complement of the "reasonably foreseeable future workforce" of NY Center. The Regional Director therefore revoked Local 300S's certification because it "was not the lawful . . . representative of NY Center's employees at any time" and "[t]o permit the election results to stand would be contrary to the Act's guarantee that employees have the right, of their own choosing, to select or reject a bargaining representative." The Regional Director declined to apply the contract bar doctrine and ordered NY Center to hold a new election with both Local 300S and Local 1199 on the ballot.

Local 1199 won the second election, held on March 11, 2004, by a vote of 200 to 5. According to an affidavit the Company proffered to the Regional Director, Local 1199 representatives had stood at the entrance to NY Center on election day, distributing hats, T-shirts, and pins to employees,

and providing coffee and food. The Company filed objections to the election on March 23, 2004 based on Local 1199's electioneering, asking the Board to set it aside. The Regional Director overruled the Company's objections on May 20, 2004 and certified Local 1199 as the collective bargaining representative of employees at NY Center. When the Company appealed, the Board declined to review the Regional Director's determination, finding that the Company had raised "no substantial issues" with respect to the election. NY Center nonetheless refused to bargain with Local 1199. When Local 1199 complained, the Board commenced an unfair labor practice proceeding. The Company conceded that it had refused to bargain with Local 1199, but contended that Local 1199's certification was invalid. Prior to the Board's decision, but after the Company's refusal to bargain, Local 1199 disaffiliated from the AFL-CIO.

By decision and order of July 29, 2005, the Board granted summary judgment, finding that the Company's refusal to bargain with Local 1199 violated Section 8(a)(5) and (1) of the Act. The Board concluded that all issues raised by the Company with respect to Local 1199's certification were, or could have been, raised in the underlying representation proceeding and that the Company offered neither to adduce newly discovered evidence nor to show any special circumstances that would require the Board to reexamine its decision to certify Local 1199. Affirmatively, as a remedy for the violation, the Board ordered the Company to bargain with Local 1199, to embody any understanding reached in a signed agreement, and to post copies of a remedial notice. The Board denied the Company's motion for reconsideration, which argued that an issue of fact existed as to whether Local 1199, after its disaffiliation from the AFL-CIO, remained the same union that employees had chosen as their representative. The Company now petitions for review, raising anew the objections it had raised to the representation

proceeding and the second election, and the unfair labor practices proceeding. The Company, however, has not challenged the Board's determination that the two entities petitioning for review constitute a single employer under the Act.

## II.

In addressing the Company's several challenges to the Board's decision and order, the court does so cognizant that the Board has "broad discretion 'to assess the propriety and results of representation elections,'" *AOTOP, LLC v. NLRB*, 331 F.3d 100, 103 (D.C. Cir. 2003) (quoting *N. of Mkt. Senior Servs., Inc. v. NLRB*, 204 F.3d 1163, 1167 (D.C. Cir. 2000)), and to establish "procedure[s] and safeguards necessary to insure the fair and free choice of bargaining representatives by employees," *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330 (1946). "Our review of the Board's factual conclusions is 'highly deferential,'" *Perdue Farms, Inc. v. NLRB*, 144 F.3d 830, 834 (D.C. Cir. 1998) (quoting *LCF, Inc. v. NLRB*, 129 F.3d 1276, 1281 (D.C. Cir. 1997)), and its findings of fact are conclusive if "supported by substantial evidence on the record considered as a whole," 29 U.S.C. § 160(e); *see Perdue Farms*, 144 F.3d at 834-35.

## A.

The Company challenges the Board's procedures in ordering a new election, contending that the Board may impugn a CBA only in an unfair labor practice proceeding and not in a representation proceeding. The procedure followed by the Board, the Company continues, improperly circumvented the six-month statute of limitations applicable to unfair labor practice proceedings. *See* 29 U.S.C. § 10(b). The Board proceeded in two steps: First, the Board revoked Local 300S's certification because the union and the Company failed to notify

the Board of Local 1199's interest and because a substantial and representative complement of employees did not exist at the time of the first election. Second, the Board ordered a new election, declining to apply the contract bar doctrine because it found that Local 300S had never been validly certified as the representative of NY Center employees. We find that the Board did not abuse its discretion by adjudicating these issues in a representation proceeding.

The Board has stated that "unfair labor practice issues *as such*" can only be adjudicated in an unfair labor practice proceeding. *All County Elec. Co.*, 332 N.L.R.B. 863, 863 (2000) (emphasis added). Thus, in *Texas Meat Packers, Inc.*, 130 N.L.R.B. 279 (1961), the Board concluded that it could not properly consider in a representation proceeding an allegation that an employer had committed an unfair labor practice under Section 8(a)(3) of the Act. Here, however, the issues the Board considered in revoking Local 300S's certification were fundamentally representation election issues, namely the Company's failure to notify the Board of Local 1199's interest, *see U.S. Chaircraft, Inc.*, 132 N.L.R.B. 922 (1961), and the premature election because a substantial and representative complement of employees did not exist, *see Gilmore Motors, Inc.*, 121 N.L.R.B. 1672 (1958). The Company and Local 300S invoked the Board's election procedures to certify Local 300S as the employees' exclusive bargaining representative; the Board could permissibly use the same proceedings to undo an improper election. *See A.J. Tower*, 329 U.S. at 330.

Contrary to the Company's position, the Board's decision not to apply the contract bar doctrine in a representation proceeding is consistent with the Act and with Board precedent, even though the Board relied upon facts beyond the four corners of the CBA, namely the facts that justified revoking Local 300S's certification. The Board has previously resolved the

applicability of the contract bar doctrine in representation proceedings, *see General Extrusion Co.*, 121 N.L.R.B. 1165 (1958), and doing so here did not resolve any unfair labor practice issues. The Board's *Outline of Law and Procedure in Representation Cases* also makes clear that the Board may find an exception to the contract bar doctrine in a representation case, even on the basis of facts beyond the four corners of a contract. NLRB, *An Outline of Law & Procedure in Representation Cases* ("*NLRB Outline of Law & Procedure*") ch. 9 (2005), *available at* http://www.nlrb.gov/publications/manuals. Neither the Outline nor *General Extrusion*, and certainly nothing in the Act, requires that a union always pursue an unfair labor practice charge in order to overcome a contract bar. *See NLRB Outline of Law & Procedure* ch. 9, § 9-212; *see also General Cable Corp.*, 139 N.L.R.B. 1123 (1962).

The Company has cited no authority to the contrary. Although the Company characterizes *General Extrusion* as "not permit[ting] the litigation in a representation (contract bar) case of the issue of whether a company is in normal operation," Petitioner's Br. at 15, that decision does not announce such a blanket rule. Further, *General Extrusion* considered the circumstances under which the number of those employed at a company at the time a CBA is entered into can justify ordering a new election despite that CBA. 121 N.L.R.B. 1165, 1166-67. Here, the Board considered the number of those employed at NY Center at the time of the first election to determine whether to revoke Local 300S's certification. Its decision not to apply the contract bar flowed from that revocation decision. As the Board counsel correctly stated at oral argument, the circumstances of this case are unusual and the Board's action seems entirely justified. We accordingly hold that the Board did not err procedurally by deciding in a representation proceeding not to apply the contract bar doctrine.

Although the Company also contends in its reply brief that the Board offered an inadequate explanation for its decision not to apply the contract bar doctrine, we decline to entertain this contention; in order to prevent the "sandbagging" of another party, "we have generally held that issues not raised until the reply brief are waived." *See Bd. of Regents of the Univ. of Wash. v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996). The Company's initial brief included a heading regarding whether the Board adequately explained its decision, but its brief addresses only the Board's procedures. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work." *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)); *see* FED. R. APP. P. 28(a)(9).

**B.**

The Company's other defenses to its conceded refusal to bargain with Local 1199 also do not support granting the Company's petition.

The Company contends that the circumstances surrounding the first election did not justify the revocation of Local 300S's certification. The record before the Board indicated two independent grounds for the revocation: failure to give proper notice and the absence of a substantial and representative complement of employees at the time of the first election. As the Board points out, by failing to address the failure to give proper notice issue in its opening brief, the Company has forfeited any right to challenge either the Board's finding that it failed to notify the Board of an interested party or the Board's conclusion that this warranted revocation of Local 300S's certification. *See Bd. of Regents of the Univ. of Wash.*, 86 F.3d at 1221.

The Company further contends that the Lyden employees should have been accreted to Local 300S. According to Board precedent, an accretion is defined "as 'the addition of a relatively small group of employees to an existing unit where these additional employees share a sufficient community of interest with the unit employees and have no separate identity. The additional employees are then properly governed by the unit's choice of bargaining representatives.'" *Safety Carrier, Inc.*, 306 N.L.R.B. 960, 969 (1992) (quoting *Safeway Stores, Inc.*, 256 N.L.R.B. 918, 924 (1981)). The Board applies its accretion doctrine "restrictively, so as not to tread too heavily on the right of employees to choose their own collective bargaining representative." *Local 627, Int'l Union of Operating Eng'rs v. NLRB*, 595 F.2d 844, 851 (D.C. Cir. 1979); *see Passavant Ret. & Health Ctr., Inc.*, 313 N.L.R.B. 1216, 1218 (1994). The Company would have the Board foist a new representative, Local 300S, on employees who have long been represented by Local 1199 even though the Board has revoked its certification for failure to notify the Board of Local 1199's interest. The Company has pointed to no authority requiring the accretion of a smaller unit into a larger one once the Board has determined that the larger unit lacks a representative, and, as explained, the Company has not adequately challenged the underlying revocation. Therefore, we find no abuse of discretion by the Board in declining to apply the accretion doctrine.

The Company's objection to the Board's summary disposition of its objections to the second election also lacks persuasive force. A party seeking to overturn a Board-administered election bears a heavy burden. *See Kwik Care Ltd. v. NLRB*, 82 F.3d 1122, 1126 (D.C. Cir. 1996). Board regulations permit a Regional Director to dispose of objections to an election without a hearing unless "the regional director concludes [the objections] raise substantial and material factual issues." 29 C.F.R. § 102.69(d). Board precedent permits

electioneering on the day of a representation election so long as it does not occur in a no-electioneering zone or while the employees are standing in line to vote, and so long as it does not substantially impair the employees' free choice. *See Overnite Transp. Co. v. NLRB*, 140 F.3d 259, 269-70 (D.C. Cir. 1998). Absent evidence of a quid-pro-quo or coercive behavior, the Board has concluded that the provision of food and campaign propaganda does not taint an election. *See id.* at 269; *NLRB v. Coca-Cola Bottling Co.*, 132 F.3d 1001, 1005-06 (4th Cir. 1997); *R.L. White Co.*, 262 N.L.R.B. 575, 576 (1982).

Here, the Company's paltry evidentiary offering provides an insufficient basis to show that the Board was required to hold an evidentiary hearing. *See Amalgamated Clothing Workers of Am. v. NLRB*, 424 F.2d 818, 828 (D.C. Cir. 1970); *Boston Insulated Wire & Cable Co.*, 259 N.L.R.B. 1118, 1118 n.3 (1982), *enforced*, 703 F.2d 876 (5th Cir. 1983). The Company's allegations involve conduct outside the polling area or any no-electioneering zone and its evidence – a one-page affidavit by one employee and a proffer of testimony by an unnamed second – failed to provide details, including how many employees were involved and what was said to them and did not allege that Local 1199 distributed paraphernalia or food as rewards. The Board reasonably could conclude that such evidence does not raise "substantial and material factual issues." 29 C.F.R. § 102.69(d); *see AOTOP*, 331 F.3d at 103. The cases cited by the Company are distinguishable; for example, in *Nathan Katz Realty, LLC v. NLRB*, 251 F.3d 981, 991-93 (D.C. Cir. 2001), union agents were within a no-electioneering zone and employees had to pass by in order to vote. In *Owens-Illinois, Inc.*, 271 N.L.R.B. 1235, 1235-36 (1984), the gifts provided by the union had the appearance of rewards for favorable votes in a close election. In summarily rejecting the Company's objections, then, the Board acted both consistently with its precedent and reasonably.

Finally, the Company contends that the Board erred in refusing to reconsider its decision that the Company had a duty to bargain with Local 1199 after the union disaffiliated from the AFL-CIO. According to the Company, the union's disaffiliation changed its identity so that new Local 1199 was not the Local 1199 that won the election. The court need not address this issue because the Company does not challenge the alternative ground on which the Board relied, namely that the disaffiliation occurred after the Company refused to negotiate.

Accordingly, we deny the petition for review and grant the Board's application for enforcement of its order.