HARDIMAN, Circuit Judge,
concurring in part and dissenting in part.
For litigation that has lasted some fifteen years, this appeal involves remarkably few disputed facts. The trouble began soon after Plaintiff Avaya (the Goliath of this saga) laid off many of its workers because of a downturn in the telecommunications market in 2000. Those layoffs gave rise to independent companies that offered aftermarket maintenance on the Private Branch Exchanges (PBXs) sold by Avaya. In fact, Avaya provided training and subsidies to companies that hired its former employees, and some companies became authorized Avaya dealers or business partners. Defendant TLI (the David of the saga) became one of those official business partners.
TLI obtained its first customer in 2001 and invested millions in its maintenance business. For whatever reason, Avaya reversed course in 2002 and began limiting the ability of its business partners, customers, and independent (unauthorized) providers to perform PBX maintenance. This change in strategy resulted in the creation of the Avaya One contract, which required Avaya business partners to promise not to solicit maintenance business from selected Avaya customers. Some 300 Avaya One contracts were signed and TLI signed its *415 contract- on March 21, 2003. Unlike all of Avaya’s- other business partners, however, TLI negotiated a handwritten modification to its covenant not to compete that exr pressly authorized TLI to solicit maintenance business from certain Avaya customers. This modification was the spark that ignited the forest fire that continues to rage twelve years later.
When Avaya’s Head of Global Sales, Linda Schumacher, learned of the carve-out TLI had negotiated, she was “shocked” and quickly took steps to cancel TLI’s contract just four months after it was signed. On July 31, 2003, Avaya gave the required 60 days’ notice that it was terminating the contract and spent the months of August and September notifying TLI’s customers that it soon would no longer be an Avaya business partner. Claiming antitrust violations, TLI went to federal court seeking an injunction requiring Avaya to allow TLI access to the codes necessary to maintain its customers’ machines. The court denied the injunction and TLI dropped the case.
Undeterred, TLI used a variety of methods to access its customers’ PBXs in order to perform maintenance. TLI accessed some machines by using passwords and logins it had received previously and it obtained others from the internet. Some of TLI’s customers had purchased permissions for the life of their machines, which enabled TLI to provide maintenance by using those logins. Other methods used by TLI were deceitful and/or unethical. For example, some Avaya business partners acted as conduits for TLI by posing as the maintenance provider, only to pass along the credentials to TLI. TLI also employed two former Avaya employees, David Cre-swick and Harold Hall, who used what they had learned to “hack and crack” the PBXs of TLI’s customers to obtain the credentials necessary to service them. In short, even after TLI was. terminated as an Avaya business partner, TLI used various methods to provide aftermarket maintenance—a service that purchasers of Ava-ya’s PBXs were expressly authorized by contract to provide for themselves or to hire third parties like TLI to provide.
Avaya sued TLI in federal court in 2006, alleging numerous causes of action under federal and state law. After seven years of scorched-earth litigation, Avaya withdrew six- claims just days before the trial began. For almost two months, Avaya put on evidence in support of its seven remaining claims. At the - conclusion of Avaya’s casein-chief, TLI moved for judgment as a matter of law under Rule 60 of the Federal Rules of Civil Procedure. The District Court granted TLI’s motions, throwing out Avaya’s case in its entirety.
My colleagues on the panel, both experienced former trial lawyers and trial judges, conclude that the District Court committed legal error when it granted TLI’s Rule 60 motions. Although I had far less experience as a trial lawyer and trial judge than my distinguished colleagues, my visceral reaction to the Court’s Rule 50 decision is consistent with theirs. The question looms large: Why, after seven years of discovery and two months of trial, did a jurist with 22 years of experience not allow any of Avaya’s claims go to the jury? To ask the question implies the imprudence of the decision, at least on an instinctual level. But visceral reactions aren’t always correct, and I must say that after reading the entire transcript of the trial, I agree with Judge Irenas’s 52-page opinion explaining his reasons for throwing out Avaya’s case. After seven years, Avaya finally withdrew almost all of its federal claims. The seven state-law claims that remained—-which involved breach of contract, fraud, and unfair competition—simply were not proven at trial. At the end of *416 the day, my assessment of Avaya’s case-in-chief is the same as the District Court’s: full of sturm und drang, but insubstantial.
Having expressed my opinion on that score, I confess enough doubt about the propriety of the District Court’s decision to grant the Rule 50 motion that the focus of my partial dissent presumes the-correctness of my colleagues’ opinion on that point. Instead, I take issue with the decision to vacate the judgment TLI earned on two of its counterclaims arising under the antitrust-laws. Even assuming, arguendo, that the District Court erred when it granted TLI’s Rule 50 motions, I remain convinced that any error had little or no impact on -the verdicts in favor of TLI, In my estimation, David struck Goliath right between the eyes and should not be deprived of his hard-earned victory on the counterclaims.
The crux of my partial dissent is that I cannot agree that the District Court’s rejection of Avaya’s claims “taintfed] the entire trial and the ultimate verdict.” Majority Op. 365. Perhaps I would find' greater assurance in the Majority’s taint analysis if Avaya had adequately raised it. I have serious doubts that it did. Even still— without the benefit of developed adversarial.-briefing-on the issue—I do not believe the District Court’s judgment as a matter of. law so impaired Avaya’s ability to de: fend itself against TLI’s allegations of anticompetitive conduct that we cannot have confidence in the jury verdict as a whole. For that reason, I would affirm the verdict with respect to Avaya’s pre-2008 attempted monopolization of the PBX maintenance aftermarket and I respectfully dissent from the Majority’s holding to the contrary.[1]
I
Under both the Federal Rules of Appellate Procedure and our Local Rules, “appellants are required to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief.” Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993). A “passing reference to an issue ... will not suffice to bring that issue before this court.” Laborers’ Int’l Union of N. Am. v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994) (omission in original) • (quotation marks omitted) (quoting Simmons v. City *417 of Philadelphia, 947 F.2d 1042, 1066 (3d Cir. 1991)). And the argument must include the “appellant’s contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.” F.R.A.P. 28(a)(8)(A); see also Simmons, 947 F.2d at 1066 (explaining that,“briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations”). Casual assertions supported only by “cursory treatment” do not suffice. Kost, 1 F.3d at 182. If a claim of error is “unaccompanied by developed argument,” it is forfeited. Rodriguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011); Kost, 1 F.3d at 182.[2]
This requirement is not a mere formality. As my esteemed colleague recently wrote: “[t]here is good reason for this [rule]. Brief, casual references to arguments do not put the opposing party on adequate notice of the issue, nor do they develop it sufficiently to aid our review.” NLRB v. FedEx Freight, Inc., 832 F.3d 432, 446, 2016 WL 4191498, at *11 (3d Cir. Aug. 9, 2016) (Jordan, J., concurring).[3] Indeed, this, “is particularly true “where important and complex issues of law are presented, [making] a far more detailed exposition of [an] argument’ ” necessary to avoid forfeiting it. Id. (second alteration in original) (quoting Frank v. Colt Indus., Inc., 910 F.2d 90, 100 (3d Cir. 1990)). This appeal presents just such a situation.
Avaya’s opening brief mentioned the taint issue only in passing. The matter received no mention in Avaya’s issues section of the brief, which I find significant because the question of whether the District Court erred in granting judgment as a matter of law against Avaya’s common law claims is an issue distinct from whether such error tainted the verdict on TLI’s antitrust claims—something the structure of the Majority opinion rightly makes clear. See United States v. Joseph, 730 F.3d 336, 341-42 (3d Cir. 2013) (distinguishing between “issues” and “arguments”), Then, on the three occasions Ava-ya did mention tainting in its brief, its argumentation was skeletal at best.[4] This *418 was not lost on TLI, which—in Avaya’s words—“crie[d] waiver” in its response brief. Avaya Reply Br. 18 n.4 (citing TLI Br. 87). Rightly so. As TLI put it, Avaya failed to “advance [its] conclusory ‘taint’ contention in a freestanding and developed argument.” TLI Br. 86. Because Avaya merely floated the taint idea “without squarely arguing it,” FedEx Freight, 832 F.3d at 446, 2016 WL 4191498, at *11 (Jordan, J., concurring), I would deem it forfeited.
The three-point tainting theory on which the Majority bases its decision comes not from Avaya’s opening brief but from its reply brief. See Avaya Reply Br. 18-19; Majority Op. 391-93. But the black-letter rule is that “[w]e will not revive a forfeited argument simply because” an appellant finally develops “it in its reply brief.” Republic of Argentina v. NML Capital, Ltd., — U.S. -, 134 S.Ct. 2250, 2255 n.2, 189 L.Ed.2d 234 (2014); see also In re Surrick, 338 F.3d 224, 237 (3d Cir. 2003). This dooms at least two taint-related arguments developed only on reply: (1) that judgment as a matter of law against Avaya’s common law claims undermined Avaya’s ability to present pro-competitive justifications for its conduct, and (2) the related point that the District Court erroneously limited witness testimony to that effect.
Avaya did not couch its argument regarding the effects of the District Court’s instructions about the lawfulness of TLI’s access to maintenance commands on the jury’s consideration of the “fear, uncertainty, and doubt” (FUD) letters in terms of tainting until its reply brief. It did, however, raise this alleged instructional error in its separate argument that the jury could not have properly found that Avaya engaged in anticompetitive conduct in the PBX maintenance aftermarket. I address this argument below. As for the other grounds on which the Majority deems the antitrust verdict improper, I would hold them forfeited.
II
Even had Avaya adequately developed all three prongs of its taint argument, I would not conclude that the District Court’s errors constituted reversible error. First, the Majority concludes that the District Court’s instructions after its dismissal of Avaya’s common law claims undermined the jury’s ability to assess the reasonableness of Avaya’s actions in light of TLI’s allegedly unlawful conduct. It highlights the trial judge’s instruction that TLI’s “use of and access to [Avaya’s] maintenance software may not be considered by you as unlawful when deciding TLI[’s] claims against Avaya asserted in the counterclaim.” App. 4739.
Despite this instruction, Avaya had ample opportunity to present the jury with legitimate and procompetitive defenses for its actions, and those defenses did not depend on whether TLI’s conduct was so egregious as to be against the law. Indeed, Avaya’s persistent refrain to the jury was that the actions Avaya took against TLI were reasonable because TLI was an “unauthorized” PBX servicer undermining Avaya’s “procompetitive” Business Partners program. App. 4569-71.[5] Avaya made *419 a thorough, sustained case for the legitimacy and procompetitiveness of its actions and did not pull any punches in lambasting TLI’s conduct. Accordingly, I think it quite unlikely that labeling TLI’s conduct “unlawful” on top of all this would have changed the result.
In a similar vein, the Majority finds taint in the constraints the District Court imposed on the evidence Avaya presented at trial. The Majority notes that Avaya “points to two examples in particular” of how the District Court’s judgment as a matter of law “hindered its ability to present evidence in its defense against the antitrust claims.”[6] Majority Op. 395. The first is the District Court’s warning that Avaya could not “tell the jury” that TLI’s means of accessing Avaya PBX systems was “illegal” during its cross-examination of TLI’s CEO. App. 4440. My colleagues concede that “the Court did allow the line of questions,” Majority Op. 395, which was not directed toward criticizing TLI’s access practices, but rather, was offered to demonstrate that Avaya’s policy toward unauthorized service providers was consistent with industry practice and did not cause TLI any anticompetitive harm. Second, the Majority is troubled by the trial judge’s rather innocuous caveat to Avaya when examining its economics expert to “[s]tay away from trying to, in effect, contradict anything I’ve already decided.” App. 4587. The Court again allowed Ava-ya’s line of questioning, deeming it “fair game” and unrelated to any allegations of illegality. App. 4586. This is unsurprising, given that the expert’s testimony was directed toward showing that TLI had in fact benefited from Avaya’s allegedly anti-competitive conduct because its Business Partners program made TLI the only independent game in town. I am at a. loss to see how the ability to call TLI’s conduct “illegal” would have meaningfully advantaged Avaya in these lines of inquiry. And even if there were instances in which this characterization would have been of rhetorical benefit to Avaya; it would not have changed the substance of Avaya’s procom-petitive-justification argument. -
Finally, I am not persuaded that the District Court’s instruction that it was not “unlawful,” App. 615, for TLl to access Avaya’s maintenance software tainted the jury’s consideration of whether the FUD letters constituted anticompetitive conduct. Among other things, these letters told Avaya customers that accessing PBX and PDS systems through unauthorized service providers “is a violation of federal and state laws and could result in civil and criminal liability and penalties” and that Avaya would “take all necessary legal action against violators.” App. 6945; see also App. 3904-05/3940, 4057-58, 7307. And with respect to these letters, the Court instructed the jury that “the law does not *420 allow [TLI’s] injury to be based on ... Avaya’s dissemination of truthful statements.” App. 621.
Even if the jury had not been instructed that unauthorized access to Avaya software was not illegal, it is unlikely that it would' have reached a different verdict. Avaya’s own witnesses admitted that they had no idea whether there was any legal basis for the letters Avaya sent to its PBX customers stating that unauthorized use of maintenance service permissions and log-ins “violates] ... federal and state laws” and “could result in civil and criminal penalties.” And they conceded that Avaya did not actually plan to sue its customers:-App. 3904-05, 3940, 4057-58-. Even if some of the threats Avaya issued in its FUD letters might have been rooted in truth (the fact that use of an unauthorized service provider could result' in the loss of certain services only provided by Avaya and its Business Partners certainly was), the jury’s inescapable conclusion was that at least some of these threats were not true. Indeed, in defending the letters, Avaya focused on the obvious truths (Avaya-ex-clusive benefits, TLI’s unauthorized status, etc.) yet conceded “the fact that a private party can’t possibly pursue criminal liability,” which is “for the public authorities.” Tr. 15871. Avaya characterized this misstatement of law as “unfortunate language,” id.; the jury surely recognized this as a euphemism for “not true.” Simply put, it was obvious to any fair-minded reader that the FUD letters were over-the-top, at least partially baseless, and threats that couldn’t fairly be described as “legal opinion.” Avaya Br. 66. I do not perceive a high probability that the jury would have found them kosher had it known that a customer’s hiring an unauthorized service provider might amount to a breach of contract. After all, it was instructed that even if “a truthful statement is coupled or limited with an untruthful statement, the truthful statement loses its protection and can underlie an injury.” App. 621.[7]
# * ⅛*
The Majority upends a sound verdict— reached after a decade of litigation and *421 seven months of trial—based on a few snippets mentioned only in passing in Ava-ya’s opening brief. The Majority picks up the dropped ball and runs with it, imbuing Avaya’s taint argument with force it never pressed in its opening brief. And even had it done so, I would not hold that any error the District Court may have committed in the second month of the trial was fatal to the whole enterprise. Accordingly, I respectfully dissent from the decision to vacate the judgment in favor of TLI on its counterclaim for Avaya’s pre-2008 attempted monopolization of the PBX maintenance aftermarket.

. "Forfeiture” and "waiver" are often treated as interchangeable terms. As I have explained ' elsewhere, they are not. See Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 432 n.1 (3d Cir. 2011) .(Hardiman, J., concurring) (“Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.”) (quoting United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotation marks omitted)).

. See also Rodriguez, 659 F.3d at 175 ("Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority.’’),

. Two of these instances, were little more than ipse dixits. See Avaya Br, 4 ("The erroneous dismissal of Avaya’s claims and the court’s .instruction that TLI[’s] conduct was not unlawful also tainted the jury's consideration of TLI[’s] antitrust counterclaims.’’); id. at 72 ("In any event, the erroneous instructions that tainted the jury's consideration of TLI[’s] "FÜD” allegations require a new trial.”). Neither of these assertions was supported by any reasoning, or citation to legal authority or record evidence. The third mention of tainting offered a few séntencés of additional bluster— accusing the trial judge of "discrediting] Ava-ya in the jury’s eyes” and "crippling] Avaya's ability to respond to TLI[’s] antitrust claims by showing that it had legitimate and procom-petitive business reasons” for its actions—but was purely skeletal. Id. at 43 (introductory paragraph to antitrust argument section). Avaya again offered no development of its theory or citation to case law or the trial record. Passing references like these should be deemed forfeited. See Bryant v. Gates, 532 F.3d 888, 898 (D.C. Cir. 2008) (holding that a claim was forfeited where it was made only in a "conclusoiy” manner because “[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel’s work" (quoting N.Y. *418 Rehab. Care Mgmt., LLC v. NLRB, 506 F.3d 1070, 1076 (D.C. Cir. 2007))); Donahue v. City of Boston, 304 F.3d 110, 122 (1st Cir. 2002) (determining that an argument was forfeited where the "main brief devote[d] only three sentences to the issue” that were "half-heart-ed” and "poorly developed”).

. In its closing argument, after explaining to the jury that it would be instructed that "TLFs use of and access to Avaya’s maintenance software may not be considered by you to have been unlawful” Avaya explained that "what remains is a series of decisions by you, as to whether Avaya’s conduct was a reason *419 able competitive reaction to the events Avaya confronted in the marketplace.” Trial Transcript O'Tr.”) 3/19/14, 15752, It then proceeded to make the case that Avaya’s actions were nothing more than "legitimate efforts to protect its software and its business model,” id. at 15756; that the law "allows for fierce, fierce competition,” id. at 15757; that Avaya’s practices were consistent with industry practices and business realities and that the Business Partner program enhanced competition in the marketplace; that its concerns about unauthorized PBX maintenance providers with no relationship to Avaya were legitimate because poor-quality servicing of Avaya PBX’s could damage the Avaya brand; and that TLI was the party with questionable practices given its choice to pursue Avaya maintenance customers without authorization rather than “play” by the "rules,” id. at 15767.

. In doing so, it fails to mention that these two examples are drawn exclusively from Avaya’s reply brief—the first time Avaya mentioned them in this appeal. Compare Majority Op. 395, with Avaya Reply Br. 19.

. Avaya’s primary attack on the FUD issue is that the jury instructions misstated the law by failing to inform the jury of "a presumption” assigning de minimis competitive effect to false statements that antitrust plaintiffs- "must overcome” by meeting a six-factor test if they are to show a FUD practice to be anticompet-itive. Avaya Br. 64 (citing American Prof'l Testing Serv. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, 108 F.3d 1147, 1152 (9th Cir. 1997)). Because our Court is not among those that have adopted this presumption and - six requirements, see, e.g., Maurice E. Stucke, How Do (and Should) Competition Authorities Treat A Dominant Firm’s Deception?, 63 SMU L. Rev. 1069, 1086 (2010), I would hold that the instructions were fine. I would also conclude that there was sufficient evidence for the jury to find the FUD letters anticompeti-tive, especially given that such a finding has stronger foundation "when ... combined with other anticompetitive acts” by Avaya. W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 109 n.14 (3d Cir. 2010).
To the extent that sufficient- evidence also needed to support TLI’s other theory of liability (anticompetitive refusal to deal) given that the general verdict form does not indicate which of Avaya’s allegedly anticompetitive acts formed the basis for the verdict, I would hold—with some reservation—that it -does. The District Court's instructions were consistent with the Supreme Court’s precedents setting forth the “limited circumstances in which a firm’s unilateral refusal to deal with its rivals can give rise to antitrust liability,” Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc., 555 U.S. 438, 448, 129 S.Ct. 1109, 172 L.Ed.2d 836 (2009), and my review of the record leads me to conclude that TLI provided that "minimum quantum of evidence'from which a jury might reasonably afford relief.” Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095 (3d Cir, 1995) (quoting Rotando v. Keene Corp., 956 F.2d 436, 438 (3d Cir. 1992)).