# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 8, 2019       Decided December 6, 2019

No. 18-5302

KAY KHINE AND CATHOLIC CHARITIES,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01924)

*David Cleveland* argued the cause and filed the briefs for plaintiffs-appellants.

*Matthew J. Glover*, Counsel to the Assistant Attorney General, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *R. Craig Lawrence* and *Peter C. Pfaffenroth*, Assistant U.S. Attorneys.

Before: SRINIVASAN, MILLETT, and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

2

PILLARD, *Circuit Judge*: Kay Khine is an asylum seeker from Myanmar. With assistance from Catholic Charities of Washington, Khine filed a Freedom of Information Act (FOIA) request with the Department of Homeland Security (DHS) seeking documents relating to her asylum application. DHS responded with an initial determination stating the number of responsive pages, the number of pages that DHS was disclosing in full and in part, the number of pages that DHS was withholding or referring to another agency for further processing, and a list and definitions of the various exemptions that DHS asserted applied to the withheld pages. Rather than appealing that initial determination within the agency, Khine and Catholic Charities immediately filed suit in district court, claiming that the agency's initial determination was part of an agency pattern of deficient FOIA initial responses, and inadequate even to trigger her obligation to exhaust her administrative remedies. The district court granted DHS' motion to dismiss on the ground that Khine had failed to exhaust her administrative remedies before seeking judicial review. We agree and affirm the district court's judgment.

**I.**

In February 2017, Khine, with Catholic Charities' help, sought under FOIA (1) a copy of her I-94 (her Arrival/Departure Record); (2) a copy of her asylum officer's notes; (3) a copy of her asylum officer's assessment; and (4) a copy of her entire file. The agency acknowledged receipt of the FOIA request eleven days later, stating that the request had been placed in DHS' "complex track" and would be handled according to its default "first-in, first-out" processing system. Eggleston Decl. ¶¶ 8-9 (J.A. 41-42).

In July 2017, DHS sent Khine an initial determination. The determination explained that DHS had identified 871 responsive pages, and that it was disclosing 849 pages in full and 11 pages in part, withholding 8 non-segregable pages in full, and referring 3 pages of "potentially responsive documents that may have originated from U.S. Immigration and Customs Enforcement" to that agency's FOIA office for review and disclosure as appropriate. DHS Initial Determination at 1 (J.A. 22). In addition, the agency explained that it had reviewed the withheld documents and determined to "release all information except those portions that are exempt pursuant to 5 U.S.C. § 552a(d)(5), (j)(2) and (k)(2) of the [Privacy Act] and 5 U.S.C. § 552(b)(5), (b)(7)(C) and (b)(7)(E) of the FOIA." *Id.* The initial determination proceeded to define those exemptions. *Id.* at 1-2 (J.A. 22-23). Finally, the determination notified Khine of her administrative appeal rights, stating: "You have the right to file an administrative appeal within 90 days of the date of this letter. By filing an appeal, you preserve your rights under FOIA and give the agency a chance to review and reconsider your request and the agency's decision." *Id.* at 2 (J.A. 23). The letter explained how to file an administrative appeal or to seek informal resolution of the dispute via the relevant DHS component's FOIA Public Liaison. *Id.* The letter did not identify which documents the agency was withholding, but the accompanying disclosed documents did not include the asylum officer's assessment.

In September 2017, DHS identified a discrepancy in its page count and sent Khine a second, essentially identical determination letter stating that nine (rather than eight) pages had been withheld in full. *See* Eggleston Decl. ¶¶ 14-15 (J.A. 43-45). Two weeks after receiving the second initial determination, without filing an administrative appeal, Khine and Catholic Charities filed a complaint in district court. The complaint included nine "causes of action." The first eight

causes of action asserted in various ways that Khine had a right to receive enough information about the agency's bases for withholding documents to make a meaningful administrative appeal. Compl. ¶¶ 11-61 (J.A. 7-13). For example, the complaint claimed that Khine had a "right to be told whether the agency has the [assessment]" (first cause of action) (J.A. 7), a "right to be told the real reason why the assessment was withheld" (second cause of action) (J.A. 8), and a "right to be told why nothing can be segregated out of an assessment" and disclosed (third cause of action) (J.A. 10). By contrast, the ninth cause of action purported to assert "Catholic Charities' rights under the FOIA" (J.A. 13), alleging that DHS had a "policy or practice" of providing inadequate initial determinations to asylum seekers, Compl. ¶¶ 74-78 (J.A. 15-16). The complaint then sought to represent a class of all asylum seekers who had received inadequate initial determinations from DHS since September 2011. *Id.* ¶¶ 79-88 (J.A. 16-18).

DHS moved to dismiss the complaint for failure to exhaust administrative remedies because Khine had not appealed within the agency. The district court granted DHS' motion. *Khine v. DHS*, 334 F. Supp. 3d 324, 329 (D.D.C. 2018). We review *de novo* the district court's dismissal for failure to state a claim, *CREW v. DOJ*, 922 F.3d 480, 486 (D.C. Cir. 2019), and affirm.

**II.**

Under FOIA, an agency generally must notify a requester of its "determination and the reasons therefor" within 20 business days of receiving the request. 5 U.S.C. § 552(a)(6)(A)(i). FOIA also requires the agency, by the same deadline, to notify the requester of her right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case

of an adverse determination, "to appeal to the head of the agency" and "to seek dispute resolution services from the FOIA Public Liaison of the agency." *Id.* If the agency meets the 20-day deadline, or if its failure to meet the deadline is the result of "unusual" circumstances warranting an extension, then the "requester is required to administratively appeal that 'determination' before bringing suit." *CREW v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013); *see also* 5 U.S.C. § 552(a)(6)(B)-(C). "Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990). Failure to exhaust is not jurisdictional under FOIA, but it "precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar." *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (internal quotation marks and citations omitted).

By regulation, DHS has created a scheme that governs how it will process FOIA requests and disclose records. *See* 6 C.F.R. § 5.1 *et seq.* That scheme describes the administrative appeals process for requesters dissatisfied with the agency's initial determination. *See id.* § 5.8. A requester "may appeal adverse determinations denying his or her request or any part of the request." *Id.* § 5.8(a)(1). A requester may also appeal if "he or she questions the adequacy of the component's search for responsive records," or if "the requester believes there is a procedural deficiency (*e.g.*, fees were improperly calculated)." *Id.* Finally, and as most relevant here, a requester "may also appeal if he or she . . . believes the component either misinterpreted the request or did not address all aspects of the request (*i.e.*, it issued an incomplete response)." *Id.*

Crucially, under DHS' rules, the "requester must generally first appeal" regarding any of the above issues unless the request is subject to expedited processing (not at issue here). *Id.* § 5.8(e). The rules further provide that any appeal will be heard by the "DHS Office of the General Counsel," that the "decision on the appeal will be made in writing," and that, if it affirms the initial determination, the appeals decision "will contain a statement that identifies the reasons for the affirmance, including any FOIA exemptions applied." *Id.* § 5.8(b)(1), (c).

The parties here do not dispute that Khine filed no administrative appeal before she sought judicial review. *See* Khine Br. 7; DHS Br. 13. Khine offers three arguments why her failure to exhaust does not bar her challenge to the agency's initial determination. We consider each argument in turn.

**A.**

First, Khine argues that she should not be required to administratively appeal the agency's initial determination because, "had [she] filed an administrative appeal, and then a complaint with the district court, she would have no standing to challenge the initial response of DHS." Khine Br. 12. Khine appears to contend that, had she filed an administrative appeal, that would have mooted any objection she had to the initial determination. But there is nothing unusual about such a result. Indeed, "however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform with respect to the particular records that were requested." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 490-91 (D.C. Cir. 1988) (internal quotation marks and citation omitted); *see also Bayala v. DHS*, 827 F.3d 31, 34 (D.C. Cir. 2016) ("[O]nce all the documents are released to the requesting

party, there no longer is any case or controversy."). A FOIA requester's primary—and typically only—interest is in receiving the documents she requested. If the administrative appeal gave her what she sought, and thereby foreclosed judicial review, the administrative process would have been working as it should. Khine's desire to avoid mooting her claim does not justify her failure to exhaust her administrative remedies.

To avoid that result, Khine insists that her interest is no longer focused on obtaining the withheld documents. She explains that she "is not now seeking documents; she seeks a reformation of the misleading and inaccurate initial response of DHS." Khine Br. 23; *see also* Oral Arg. Rec. at 1:42-1:46 ("We're not seeking the documents right now. We're challenging the initial response."). But a non-repeat FOIA requester like Khine lacks standing to "seek[] a reformation," Khine Br. 23, of the way an agency handles its FOIA requests. Such a claim is a challenge to an agency "policy or practice." *See Payne Enters.*, 837 F.2d at 491. Policy-or-practice claims are an exception to the ordinary rule that disclosure of the requested information will moot a FOIA claim. In policy-or-practice cases, "even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Id.* The problem for Khine is that only repeat requesters who "will suffer continuing injury" have standing to bring such claims. *Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012); *see also CREW v. DOJ*, 846 F.3d 1235, 1242 (D.C. Cir. 2017). Khine lacks standing to press a policy-or-practice claim because, as she herself explains, she "will not make future requests" and "she is not a business that will file requests in the future." Khine Br. 15, 18. Since Khine is not likely to be subject again to the agency practice she seeks

to challenge, she does not have standing to seek a "reformation" of DHS' initial determinations, and she cannot rely on that interest to justify her failure to exhaust.

Khine fears that this result renders the agency's initial determinations "immune from judicial scrutiny." *Id.* at 16. But there is a party who might have brought a policy-or-practice claim: Catholic Charities. As noted, the ninth cause of action in the complaint gestured toward such a claim, and the district court concluded that "Catholic Charities is likely to be subjected to the [alleged] policy again." *Khine*, 334 F. Supp. 3d at 332 (internal quotation marks and citation omitted). But, on appeal, counsel for Khine and Catholic Charities repeatedly stated that Catholic Charities was not itself a requester of the information at issue and that Khine was the sole FOIA requester in this case. *See* Oral Arg. Rec. at 4:04-4:11 (Court: "[W]ho is the FOIA requester in this case?" Counsel: "Kay Khine is the requester."); *id.* at 5:43-5:46 ("Kay Khine is making the request. She's the named plaintiff."); *id.* at 7:07-7:14 (Court: "Catholic Charities has not made its own FOIA request for these documents?" Counsel: "No, it hasn't.").

For this reason, even though FOIA permits "any person" to make a FOIA request, 5 U.S.C. § 552(a)(3)(A), and Catholic Charities could have sought Khine's asylum file, we take counsel at his word and accept that Catholic Charities is not a requester here. Because only an entity that has filed a FOIA request (and will do so again in the future) may bring a policy-or-practice claim, Catholic Charities, too, lacks standing to pursue such a claim in this case.

**B.**

Next, Khine argues that she had "no duty" to file an administrative appeal at all because the agency has not yet "made a 'determination' as required by § 552." Khine Br. 37.

As noted, FOIA requires the agency to provide the requester with a "determination and the reasons therefor" within 20 business days of receiving the request. 5 U.S.C. § 552(a)(6)(A)(i). DHS did not make the disputed determination within twenty business days. But if the "agency responds to the request after the twenty-day statutory window, but before the requester files suit," as occurred here, then "the administrative exhaustion requirement still applies." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003). Nonetheless, Khine argues that the agency "did not trigger the need to file an administrative appeal because DHS did not provide 'the' reasons for its determination," Khine Br. 37, and did not "provide 'the' reasons why nothing could be segregated out of the assessment," *id.* at 46. In other words, she views the agency's initial determination as inadequate so not a legally operative "determination."

We evaluate this argument under the framework of constructive exhaustion. FOIA provides that a requester may be treated as if she exhausted the administrative appeals process where the agency did not provide a timely determination: "Any person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." 5 U.S.C. § 552(a)(6)(C)(i). We recently explained that, "in order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *CREW*, 711 F.3d at 188; *see also Oglesby*, 920 F.2d at 65. The first and third requirements are satisfied because the

agency gathered and reviewed—and in fact produced—more than 800 pages of responsive documents, and it notified Khine of her administrative appeal rights and the process and timeline for appealing. DHS Initial Determination at 1-2 (J.A. 22-23).

Khine's argument that the agency failed to provide the "reasons" for its withholding and segregation decisions goes to whether the second *CREW* requirement is met. We conclude that, under the statute and our precedent interpreting it, DHS satisfied its obligation to "determine and communicate . . . the reasons for withholding any documents." *CREW*, 711 F.3d at 188. We explained in *CREW* that the "statutory requirement that the agency provide 'the reasons' for its 'determination' strongly suggests that the reasons are particularized to the 'determination'—most obviously, the specific exemptions that *may* apply to certain withheld records." *Id.* at 186 (emphasis added); *see also id.* at 187 n.5. The initial determination here provided reasons by listing and defining the exemptions that the agency applied to the records responsive to Khine's request. DHS Initial Determination at 1-2 (J.A. 22-23).

As for Khine's claim that the initial determination "did not provide 'the' reasons why nothing could be segregated out of the assessment," Khine Br. 46, we do not require the agency at this stage, as Khine appears to suggest, to provide a document-by-document *Vaughn* index, which this court has recognized is a "judicial rule" that "governs litigation in court and not proceedings before the agency." *NRDC v. NRC*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). *CREW* itself recognized as much, reiterating that an "agency is not required to produce a *Vaughn* index." 711 F.3d at 187 n.5. The level of detail that DHS provided is sufficient to explain the reasons for its withholding and segregation decisions, and amounted to a "determination" that triggered the FOIA administrative appeals process. *Cf.* 6 C.F.R. § 5.8(a)(1).

Finally, to the extent Khine's challenge goes beyond the adequacy of the agency's "reasons" for withholding and segregating responsive information to assail its lack of descriptions of the documents withheld, we consider that challenge forfeited. It is true that, in its initial determination, DHS provided only the number of pages it was withholding, rather than, say, a description or list of the withheld documents. But, on appeal, Khine has not challenged that aspect of the initial determination. Instead, Khine argues only that the "initial response of DHS did not trigger the need to file an administrative appeal because the DHS did not provide 'the' reasons for its determination." Khine Br. 11; *see also id.* at 37. Khine challenges the initial determination's failure to give the reasons for the withholdings, *id.* at 40-46, and its failure to explain why additional segregation was not possible, *id.* at 46-48. None of those arguments questions whether the agency's description of the documents withheld—rather than the exemptions asserted—was adequate to constitute a "determination" that triggered the exhaustion requirement. At best, Khine mentions in passing in the Introduction to her brief that the agency's determination "does not state what those 8 [withheld] pages are, nor does it state whether the 'assessment' is included in those pages." Khine Br. 1; *see also id.* at 47 (noting, in the context of segregability, that "Ms. Khine does not know what the '8 pages' are"). But the argument is not developed in the body of the brief, and "[i]t is not enough merely to mention a possible argument in the most skeletal way." *N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007). Therefore, we "decline to entertain this contention." *Id.*

## C.

Khine's final argument is that any obligation to file an administrative appeal should be excused. Khine Br. 23-37.

The district court has discretion to overlook a failure to exhaust if "the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004) (internal quotation marks and citation omitted). Excusing Khine's failure to exhaust would be inappropriate here. Khine's case focuses on the inadequacy of DHS' initial FOIA determination, but a shortfall of that type is paradigmatic of the type of problem that an administrative appeal is particularly suited to resolve. Administrative appeal provides the agency a further chance to "exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby*, 920 F.2d at 61. As we explained, "[a]llowing a FOIA requester to proceed immediately to court to challenge an agency's initial response would cut off the agency's power to correct or rethink initial misjudgments or errors." *Id.* at 64. Short of a properly presented claim that the agency has a policy or practice of providing inadequate initial determinations, we cannot conclude that Khine's interest in immediate judicial review outweighs the agency's interest in managing and completing its administrative process.

\* \* \*

For the foregoing reasons, we hold that Khine has failed to exhaust her administrative remedies under FOIA and affirm the district court's judgment.

*So ordered*.